## Tilford's Case.

C bequeathed to her grandson, A, 4000 dollars, to be invested in business for the benefit of his mother and her children for five years, without interest, and at the expiration of that time to be equally divided into three parts, one of which she gave to each of her grand-children, and she appointed the said A her executor, who put the money into his own mercantile business. A having failed in business, it was *held,* that the said sum of 4000 dollars was such a debt due by him, as that he might prefer the same in a voluntary assignment for the benefit of his creditors.

APPEAL from the decree of the court of common pleas of *Allegheny* county.

Alfred M. Tilford having failed, made a voluntary assignment for the benefit of his creditors. The account of his assignees was referred to auditors, who made the following report of the facts and the law.

"The report of Tho. H. Baird, James Findlay and H. H. Van Amringe. auditors to whom this case stands referred for the purpose of auditing the account of the assignees and of distributing, &c., after a full examination of the said accounts, and having heard the proofs and allegations of the parties, do find the following facts, viz.:

"Alfred M. Tilford, the assignor, was engaged in mercantile business at Pittsburg on his own account, about a year or better before the death of Mrs Clopper, his grandmother. He was then a young man, but had been of age some time. His habits, including his business habits, were good, and he was a very promising young man. His grandmother, Sarah Clopper, had very great confidence in him and lent him 4000 dollars, taking his note for it

without further security, she having no doubt he would make a fortune. This loan was made about a year before the death of the old lady, and furnished the principal fund upon which the young man set up business; but he had also some other capital, the amount, however, not known, being his salary before that time earned. When he went into business, his father was in pecuniary embarrassment, and was insolvent before and at the date of Mrs Clopper's will. During all this time and till the assignment, Alfred lived with his father, mother and the family, and continued in business until the assignment. His mother had five children, viz: Alfred and two younger brothers, and two sisters, all of whom, it is believed, are yet living; they all lived together, but there was no evidence before the auditors to prove whether the father or Alfred supported them. In this state of the family, Sarah Clopper, the grandmother, made her will, dated the 18th of February 1835; and by this will did, among other things, give and bequeath to her grandson, the said Alfred, 4000 dollars, to be invested in business for the benefit of his mother and her children, for five years, without interest, and at the expiration of that time to be equally divided into three parts, viz: 1333 dollars 33 cents to be settled on her daughter, Ruth Hunter Tilford, (the mother of the said Alfred,) for her exclusive benefit; the sum of 1333 dollars 33 cents to be settled on her granddaughter, Eliza Noble Davis, (daughter of Sarah E. Gray;) and the last third, being 1333 dollars 33 cents, to be settled on her grandson, John Clopper. This John Clopper is not a child of the said Ruth H. Tilford.

" Sarah Clopper, the testatrix, appointed the said Alfred the executor of her said will, and died, not having altered or revoked the same. Her will was duly proved on the fourth day of March 1835, but no letters testamentary issued thereon, nor was any inventory filed. The 4000 dollars in the will mentioned, is the same sum of 4000 dollars so as aforesaid loaned by said testatrix, in her life time, to the said Alfred. And the auditors are unanimously of opinion, that the intention of said will was to continue said loan to said Alfred for five years, without interest, he maintaining or contributing to the maintenance of his mother and her children for that period, and at the end of that time paying and dividing the said 4000 dollars to and among the three legatees named in the will. The auditors are, therefore, of opinion that the said 4000 dollars was a proper and *bona fide* debt of the said Alfred, and that he had a right to anticipate and prefer and provide for the payment thereof, as done by him in his assignment, no objection being made by his mother, or on the part of any of her children."

*Forward* and *Metcalf*, attorneys for Agnew & Co. and other creditors of A. M. Tilford, file the following exceptions to said report, viz:

" They object to the allowance, by the auditors, of 4000 dollars to the legatees of Mrs Sarah Clopper.

[Tilford's Case.]

" 1. Because the said 4000 dollars, for which the said three persons are preferred in Tilford's assignment, was given by the last will and testament of Mrs Clopper to said A. M. Tilford, to be by him invested in business as capital, for the benefit of said Tilford's mother and her children, for the period of five years, and was so invested by him.　He was, therefore, accountable to them for any profit accruing upon said capital, and they were to take the risk of losses.　It was, then, a partnership fund, and subject to the debts incurred by Tilford in business, and can not be withdrawn from said concern until all debts are paid.

" 2. Said 4000 dollars were given by said last will and testament to said A. M. Tilford, to be employed by him for the period of five years, for the purposes mentioned in said last will; within that period it can not be withdrawn and paid over to the reversioners, to the prejudice of creditors who may have entrusted Tilford with goods upon the faith of that fund, and that it would stand pledged for the debts of said Tilford for that period at least."

The court below (Dallas, president) overruled the exceptions and confirmed the account.

*M'Candless* and *Forward*, for appellants, cited *Gow on Part.* 15, 16, 17; 2 *Wm. Bl.* 998; *Mont. on Part.* 41; 5 *Rawle* 151; 1 *Maul & Selw.* 412.

*Williamson* and *Lowrey, contra*, cited *Tol. on Executors* 306, 344; 1 *Har. & Johns.* 139; 1 *Rop. on Leg.* 569; 2 *Pr. Wms.* 316; 2 *Strange* 947; 3 *Term Rep.* 618.

The opinion of the Court was delivered by

· GIBSON, C. J.—It is inaccurate to say that the money in contest was primarily bequeathed to Mrs Tilford and her children.　It was bequeathed for a definite period to the executor himself, in trust, to employ it in business and apply the produce of it to their maintenance.　During that time the testatrix gave them no property in the principal, and it is fallacious to assume that she put so much into joint trade as their part of a capital, and that, having thus constituted a partnership betwixt them and the executor, she intended to leave them exposed to the mischances of that relation. Had there been a partnership, it would not have been a limited one, but such as might have plunged not only their legacy, but all they had beside, into the gulf of his debts; and her bounty might thus have brought them destruction, instead of succour.　But she gave them an interest only in the profits, which, though a title to call their trustee to account, was an equitable one; and we know of no such thing as an equitable partnership.　The executor, though not the benefiiary, was the legatee for the purpose of the trust; and what was it?　To invest, during a limited time, the principal in business for his mother and her children, and to apply the

produce of it to their maintenance. That did not require it to be invested in partnership. Had she directed him to invest it, during the period, for his own profit, there would not have been a doubt about it; it would have been a loan without a feature of partnership, or any thing else that could have involved its existence in the fate of his house. What else is this legacy, standing as it does, than a bequest of the use, the principal being employed under his management? He was not required to invest it in his own business; and what if he had lent it to a merchant on terms of securing the principal and accounting for the profits? It would have been, nevertheless, a loan, and perhaps not illegal, even had the profits transcended the legal rate of interest; certainly it would have been void, on that account, for no more than the excess. Uniting, then, in his person, the separate characters of borrower and lender, he remained debtor to the fund for the principal, as he would have done for the rest of his capital had he borrowed it from the assets; and surely a provision for the repayment of such a loan is not fraudulent. Mercantile creditors have priority of recourse only to joint effects, and through the equities of partners against each other; but where there has been no partnership, there are neither joint and separate estates, nor joint and separate creditors; and he who furnished the table stands on a footing with him who stocked the store. It will not be supposed that the testatrix designed to subject her bounty to the hazards of any one's business. It was a gift, not of the debt, but of the produce of it; and that, as I have said, did not make the principal the less a debt, or give the other debts a preference. Partnership being out of the way, the use to which it was destined did not change its character, or subject it to the demands of any one but those who were intended to benefit by it. The assignees, therefore, will pay the money to the parties indicated by the will and the assignment; and the court, as it has been suggested that the guardian of one of them is insolvent, will see that the proper caution is given.

Report and decree affirmed.